Joseph v. HDMJ

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————

August Term, 2010

(Submitted:  October 28, 2010                              Question Certified: August 5, 2011)

Docket No. 10-1366-cv

———————

GERMELIA JOSEPH,

*Plaintiff-Appellee*,

—v.—

GEORGE ATHANASOPOULOS, GUS ATHANASOPOULOS, PETER ATHANASOPOULOS,

*Defendants*,

HDMJ RESTAURANT, INC.,

*Defendant-Appellant*.

———————

B e f o r e :

KATZMANN and HALL, *Circuit Judges*, and JONES, *District Judge*.[*]

———————

Interlocutory appeal from an order of the United States District Court for the Eastern District of New York (Seybert, *J.*) granting in part and denying in part defendant's motion to dismiss on *res judicata* grounds.  Question certified.

---

[*] The Honorable Barbara S. Jones of the United States District Court for the Southern District of New York, sitting by designation.

Germelia Joseph, *pro se*, Baldwin, N.Y., *for Plaintiff-Appellee*.

David S. Feather, Garden City, N.Y., *for Defendant-Appellant*.

KATZMANN, *Circuit Judge*:

Defendant-Appellant HDMJ Restaurant, Inc. ("HDMJ") appeals from an order of the United States District Court for the Eastern District of New York (Seybert, *J.*) insofar as that order denied HDMJ's motion to dismiss Plaintiff-Appellee Germelia Joseph's claims alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 *et seq.* This appeal calls upon us to resolve a question of New York's law of *res judicata*[1]: Does a New York court's judgment dismissing on timeliness grounds a plaintiff's Article 78 petition seeking review of an adverse administrative determination of her employment discrimination claims preclude the plaintiff from bringing federal discrimination claims in federal court? For the reasons that follow, we believe that this question, as restated at the conclusion of our opinion, warrants certification to the New York Court of Appeals.

## BACKGROUND

The following factual allegations are drawn from Joseph's complaint and records of related state proceedings.

---

[1] "Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (alterations in original) (internal quotation marks omitted). This opinion uses the terms "*res judicata*" and "claim preclusion" interchangeably.

2

Joseph is a black female of Haitian origin. She worked as a waitress at HDMJ, a Nassau County restaurant known as Yesterday's Diner, between March 2004 and January 2006. Joseph alleges that defendants George, Gus, and Peter Athanasopoulos, all brothers, owned HDMJ in part and supervised Joseph while she worked there.

According to Joseph, the individual defendants "constantly" made racial slurs towards her and at numerous times demanded sexual favors. App. 22. After complaining to Gus Athanasopoulos about a busboy's request for fellatio, Joseph was suspended from work for twelve days. At one point, Joseph asserts, Peter Athanasopoulos pulled a knife from his pocket and told her that he used the knife to cut the throats of waitresses who would not perform fellatio on him.

Joseph also avers that in February 2005, she injured her knee in a car accident. Although this injury was known to the defendants, Peter Athanasopoulos allegedly grabbed Joseph's hand and pulled her downstairs to the restaurant's basement to berate her for complaining that he was directing customers away from the area that she served. Joseph told him that going downstairs would aggravate her injury, but he responded that he did not care. On the day after Joseph complained about this incident to Gus Athanasopoulos, George Athanasopoulos terminated Joseph and told her never to return to the premises.

On March 7, 2006, Joseph filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and a verified complaint with the New York State Division of Human Rights ("DHR") alleging that HDMJ had violated the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* The DHR investigated the allegations in the complaint and found probable cause to believe that HDMJ had engaged in unlawful employment

3

practices. On April 12, 2007, the DHR held a public hearing at which HDMJ failed to appear. The DHR then issued an order sustaining the complaint and awarding monetary damages. HDMJ appealed from that order on the basis that it did not receive proper notice of the hearing. In 2007, the New York Supreme Court, Nassau County, vacated the order and remanded for further proceedings.

On January 16 and 17, 2008, Administrative Law Judge ("ALJ") Thomas S. Protano held further hearings, at which HDMJ appeared, where the ALJ received the testimony of Joseph, the individual defendants, and other waitresses who worked at the restaurant. Joseph was represented at the hearings by a DHR attorney. In June 2008, the ALJ issued a report and recommendation concluding that Joseph's claims were not credible. He found that, *inter alia*, Joseph never complained to George Athanasopoulos that his brothers had harassed her; Peter Athanasopoulos neither carried a knife nor made any crude statements or threats to Joseph; Peter Athanasopoulos did not drag Joseph down a flight of stairs while her knee was injured; George Athanasopoulos investigated Joseph's allegation that a busboy had propositioned her for fellatio and fired the busboy; and Joseph repeatedly engaged in loud, disruptive behavior and otherwise acted inappropriately at work. On July 30, 2008, the DHR adopted the ALJ's report and issued an order dismissing the case. The order stated that any appeal to the New York Supreme Court must be filed within sixty days of the order's service.

Joseph, acting *pro se*, filed an Article 78 petition in New York Supreme Court, Nassau County, challenging the DHR's order. Joseph's petition was dated October 22, 2008, and was accompanied by a verification sworn on October 24, 2008. HDMJ moved to dismiss on the ground that the petition was untimely under N.Y. Exec. Law § 298, which provides that any such

4

proceeding must be initiated within sixty days of service of the challenged order.  In an order and

judgment dated March 9, 2009, the Nassau County Supreme Court granted that motion.

Although there was no documentary evidence that the DHR order was actually served on Joseph,

Joseph admitted that she had received that order on August 2, 2008.  The court thus concluded

that the petition was untimely because it was not filed within sixty days of August 2, 2008.

Joseph received a right-to-sue letter from the EEOC on November 18, 2008.  On January

20, 2009, while her Article 78 proceeding was pending, Joseph filed in federal court a complaint

alleging violations of Title VII, the ADA, the NYSHRL, and the New York Labor Law, arising

from substantially the same factual allegations that were the subject of the administrative

proceedings.  The individual defendants moved to dismiss the Title VII and ADA claims against

them on the ground that they could not be held liable in their individual capacities under those

statutes.  Following the Nassau County Supreme Court's dismissal of Joseph's Article 78

proceeding, all defendants filed a second motion to dismiss the complaint on the basis of *res

judicata*.

On October 19, 2009, the district court issued a Memorandum and Decision on the

motions to dismiss.  That ruling granted the individual defendants' motion to dismiss the Title

VII and ADA claims, granted the second motion to dismiss on the basis of *res judicata* with

respect to Joseph's state law claims, denied that motion with respect to Joseph's Title VII and

ADA claims, and suggested that the aforementioned denial was suitable for immediate

interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *See Joseph v. HDMJ Rest., Inc.*, 685 F.

Supp. 2d 312, 318 (E.D.N.Y. 2009).  Accordingly, HDMJ requested that the district court certify

such an appeal.  The court granted that request and certified for interlocutory appeal the

5

question:  "Does *res judicata* bar Plaintiff's Title VII and ADA claims?".  A motions panel of this court granted HDMJ's motion for leave to appeal from the order.  This appeal followed.

## DISCUSSION

"We review *de novo* the district court's application of the principles of *res judicata*." *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (internal quotation marks omitted).

### I.

The question presented in this appeal is one of interjurisdictional preclusion:  when a New York court enters a judgment dismissing as untimely a plaintiff's challenge to the DHR's rejection of her discrimination claim, does that state court judgment bar the plaintiff from bringing in federal court federal statutory claims arising from the same alleged discriminatory acts?

Our analysis begins with the full faith and credit statute, 28 U.S.C. § 1738, which provides in pertinent part that "[t]he . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State."  The Supreme Court has held that § 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982).

In *Kremer*, the Supreme Court addressed whether "Congress intended Title VII to supersede the principles of comity and repose embodied in § 1738," and in particular, "whether a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim as

6

meritless when the state court's decision would be res judicata in the State's own courts." *Id.* at

463.[1] The Court concluded neither the text, history, nor purpose of Title VII demonstrated any

congressional intent to create an exception to § 1738. *Id.* at 476.[2]

The Supreme Court has since held that for purposes of Title VII claims, the rule of

preclusion set forth in *Kremer* does not extend to administrative determinations when the

plaintiff has not sought judicial review in state court. *University of Tennessee v. Elliott*, 478 U.S.

788 (1986), presented the question of whether unreviewed state administrative findings were

entitled to preclusive effect in federal court when the plaintiff asserted discrimination claims

under various federal statutes, including Title VII. The Court concluded that § 1738 does not

govern whether federal courts must give state administrative proceedings (as opposed to state

court judgments) preclusive effect. *Id.* at 795. The Court then declined to fashion a common

law rule affording preclusive effect to these unreviewed administrative determinations in the

Title VII context, finding that such a rule would be inconsistent with Congress's intent that Title

VII plaintiffs receive a trial *de novo* in federal court following state administrative proceedings.

*Id.* at 795-96.

*Kremer* and *Elliott* make clear that in determining the *res judicata* effect of a state court

---

[1] In states such as New York that have agencies analogous to the EEOC, aggrieved employees must present their Title VII claim to that state agency before seeking relief in federal court. *See Kremer*, 456 U.S. at 463-64 (citing 42 U.S.C. § 2000e-5(c)). The ADA incorporates these same enforcement procedures. *See* 42 U.S.C. § 12117(a).

[2] *Kremer* noted that in order to be entitled to preclusive effect, state administrative proceedings must satisfy the minimum requirements of the Fourteenth Amendment's Due Process Clause. 456 U.S. at 481-82. The *Kremer* Court expressed "no hesitation" in holding that the "panoply of procedures" available in the DHR proceedings at issue, which were "complemented by administrative as well as judicial review," comported with the Due Process Clause. *Id.* at 484. There is no claim in this appeal that New York's administrative procedures were inconsistent with due process.

judgment on a plaintiff's federal statutory claims, the federal court must give that judgment the same preclusive effect as would the courts of the state rendering that judgment. Thus, the question here is whether New York courts would hold that a judgment dismissing on timeliness grounds a challenge to the DHR's order precludes the assertion of federal statutory claims in a forum where those claims are not untimely.

Our court has struggled with this question. In *Bray v. New York Life Insurance*, 851 F.2d 60 (2d Cir. 1988), we confronted a factual scenario identical in all material respects to what is presented here. Evelyn Bray, a black female who was terminated from her job, filed discrimination claims with the DHR and EEOC. On April 25, 1985, the DHR issued a determination and order concluding that there was no probable cause to believe that Bray's employer had engaged in the alleged discriminatory practice.[3] On June 25, 1985, Bray, acting *pro se*, filed an Article 78 action challenging the DHR's determination. Meanwhile, she received a right-to-sue letter from the EEOC and initiated a federal action raising claims under Title VII. The New York Supreme Court, Westchester County, dismissed the Article 78 petition as untimely by one day. The federal district court concluded that the state court's dismissal

_____

[3] This order also included the following warning:

> PLEASE TAKE FURTHER NOTICE that a complainant who seeks state judicial review, and receives an adverse decision therein, may lose his or her right to proceed subsequently in federal court under Title VII, by virtue of *Kremer v. Chemical Construction Co.*, 456 U.S. 461 (1982).

*Bray*, 851 F.2d at 61; *see also, e.g.*, *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 125 (2d Cir. 2006) (discussing DHR order containing identical warning). Unlike the DHR orders in *Bray* and *Francis*, the DHR order dismissing Joseph's complaint did not address the possible preclusive consequences of seeking judicial review in state court. It strikes us that absent such a warning, the risks that accompany a decision to seek state judicial review are unlikely to be fully appreciated by a *pro se* litigant.

would be given preclusive effect by New York courts and therefore must be given the same effect in federal court. *Id.* at 61-62.

Our court affirmed. As an initial matter, we noted that the case "seems to fall somewhere between the rule governing application of § 1738 as set out in *Kremer* and the policy underlying *Elliott*." *Id.* at 62. We concluded, however, that *Elliott* was inapplicable because "[w]hen a plaintiff has sought state judicial review of an agency decision, *Kremer* requires that we look to the preclusive effect that New York would give to the judgment of its court," even if the state court dismissed the challenge on timeliness grounds and did not review the underlying administrative findings. *Id.* at 63. Turning to New York's law of *res judicata*, we noted that "New York considers a dismissal on statute of limitations grounds 'at least sufficiently close to a decision on the merits to bar a second action.'" *Id.* at 64 (citing *Smith v. Russell Sage College*, 429 N.E.2d 746 (N.Y. 1981), and a number of other decisions by New York's appellate courts). For these reasons, we held:

> Because New York treats a dismissal on statute of limitations grounds as a final judgment on the merits for *res judicata* purposes, Bray is precluded from relitigating her sex and race discrimination claims in federal court. We recognize the unfairness of precluding Bray from having a court reach the merits of her claim, but there is no principled basis upon which to distinguish her case from the governing New York law. Unfortunately for Bray, "[t]he crucial factor is that [she] chose to submit her case to the state *courts* for review." Once a plaintiff has entered the state court system, she is bound by the preclusion rules governing that system, and the federal courts in turn must respect the finality of the judgments that issue from the state court.

*Id.* at 64 (alterations and emphasis in original) (citation omitted).

Twenty-one years later, this court revisited *Bray*'s conclusion that New York courts treat the dismissal of a claim on timeliness grounds as a decision "on the merits" such that the judgment is entitled to preclusive effect. In *Cloverleaf Realty of New York, Inc. v. Town of*

9

*Wawayanda*, 572 F.3d 93 (2d Cir. 2009), the plaintiffs owned parcels of land that became subject to a New York town's special assessment of a property tax. The plaintiffs brought a state-court declaratory judgment action challenging the substantive basis of the assessment and contending that procedural due process required actual notice of a public hearing, which the town did not provide. The state court found that the plaintiffs' claims were subject to a four-month statute of limitations and dismissed the complaint as untimely. The plaintiffs then brought an action in federal district court under 42 U.S.C. § 1983 contending that the failure to provide notice violated the Due Process Clause. Although the complaint was filed within the three-year limitations period applicable to § 1983 actions against New York officials, the district court dismissed the federal claim as precluded by the state court's dismissal. *Id.* at 94-95.

The "difficulty" in *Cloverleaf*, we observed, "arises from the circumstance that [plaintiffs'] procedural due process claim was untimely under the law applied by the New York courts, but timely under the law applied by the federal courts." *Id.* at 95.[4] Notwithstanding *Bray*, we agreed with the plaintiffs that the district court had erred "in failing to apply an exception to claim preclusion where the first claim was dismissed solely for lack of timeliness and the second claim is brought in another state or jurisdiction." *Id.* To the extent that *Bray* suggested otherwise, we determined that *Bray*'s holding was no longer binding, because the New York Court of Appeals had since indicated in *Tanges v. Heidelberg North America, Inc.*, 710 N.E.2d 250 (N.Y. 1999), that the expiration of the time period enumerated in a statute

---

[4] This difficulty, of course, was also present in *Bray*, where the plaintiff's Article 78 challenge was untimely under the applicable New York statute of limitations, but her Title VII claim was timely under the applicable federal limitations period, which provides ninety days from the plaintiff's receipt of a right-to-sue letter from the EEOC for the plaintiff to bring a civil action. *See Bray*, 851 F.2d at 61-62; *see also* 42 U.S.C. § 2000e-5(f)(1).

10

of limitations would not bar an otherwise available federal court remedy. *Cloverleaf*, 572 F.3d at 95-96 & n.2.

Against this background, the district court here acknowledged that under *Bray*, the defendants would have prevailed in their motion to dismiss Joseph's federal claims on the basis of *res judicata*. *Joseph v. HDMJ Rest., Inc.*, 685 F. Supp. 2d 312, 315-16 (E.D.N.Y. 2009). The court went on to observe, however, that *Cloverleaf* "appears to eviscerate the basis for *Bray*'s long-standing holding that a dismissal of an Article 78 petition for untimeliness constitutes a decision 'on the merits' which creates a *res judicata* bar to a subsequent Title VII suit in federal court." *Id.* at 316. Because the Nassau County Supreme Court dismissed Joseph's Article 78 petition as untimely and did not address the substance of the DHR's findings, the district court held that this dismissal was not "on the merits" and that it therefore did not preclude Joseph's claims under Title VII or the ADA. *Id.* at 316-17.[5]

## II.

To resolve this appeal, we must reconcile the seemingly divergent holdings of *Bray* and *Cloverleaf*. While we are as a general matter "bound to abide by our most recent precedent," *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995), the facts of *Bray* are more closely analogous to Joseph's predicament than those of *Cloverleaf*. The latter case, as the

---

[5] As to the ADA claim, the district court applied a preclusion analysis identical to that pertaining to the Title VII claim. Neither of the parties takes issue with that determination, and we are aware of no distinction between these two statutes that would require affording a state court judgment a different preclusive effect. *See, e.g.*, *Staats v. Cnty. of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000) ("Although [plaintiff's] claims arise under the ADA and the Rehabilitation Act, not Title VII, we think the logic of *Kremer* and *Elliott* applies equally to other federal anti-discrimination statutes."); *Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 n.5 (1st Cir. 1998) ("[T]he ADA incorporates the same Title VII deferral procedures, *see* 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5), on which the Supreme Court relied in *Kremer* and *Elliott*; therefore, those holdings apply with equal force in the ADA context.").

district court here noted, "did not concern a plaintiff who filed an untimely Article 78 petition challenging a New York state agency's administrative findings," and thus did not expressly overrule *Bray* as applied to this scenario. *Joseph*, 685 F. Supp. 2d at 316. In *Bray*, as here, the DHR reviewed the substance of the plaintiffs' discrimination claims; in *Cloverleaf*, there was no state administrative or judicial review of the substance of the procedural due process claim. Given the lack of clarity as to whether *Cloverleaf* or *Bray* should bind this panel, we find it appropriate to examine the distinct views of New York's preclusion law underlying those decisions.

*Bray*'s holding rests on the proposition, which derives principally from *Russell Sage*, that New York courts consider a dismissal on timeliness grounds to be "at least sufficiently close to a decision on the merits to bar a second action." 851 F.2d at 64 (internal quotation marks omitted). While *Russell Sage* suggests as much, it does not clearly so hold. The plaintiff in that case, a former administrator at a junior college, brought two successive actions asserting various fraud and contract claims arising from an alleged oral employment agreement, an exchange of letters regarding that agreement, and his eventual termination. In the first action, the state trial court, treating the college's motion to dismiss as a motion for summary judgment, dismissed the portion of the suit that was based on the alleged oral agreement as barred by the statute of frauds and dismissed the remainder of the suit as barred by the applicable one-year statute of limitations. In the second suit, the plaintiff asserted additional fraud claims arising from conversations between the plaintiff and the college's president regarding the same agreement. The Court of Appeals concluded that *res judicata* barred the second action. 429 N.E.2d at 746-50.

Of particular relevance to us is *Russell Sage*'s discussion of "whether the dismissal of the plaintiff's prior action on Statute of Limitations and Statute of Frauds grounds was 'on the merits' for claim preclusion purposes." *Id.* at 750. In that regard, the court noted:

> [T]he impact of the Statute of Limitations, though often denominated as procedural, in a practical sense may also be said to be substantive; as we have had occasion to observe, "while a time bar is usually said to affect the remedy . . . its interposition is at least as often the difference between life or death for the right as well" as the remedy.

*Id.* (omission in original). The Court of Appeals concluded:

> Suffice it to say that a dismissal on these grounds [*i.e.*, based on the statute of frauds and the statute of limitations] is at least sufficiently close to the merits for claim preclusion purposes to bar a second action, especially where the motion to dismiss the first action was treated as one for summary judgment on which the court considered submissions of the parties dehors the pleadings.

*Id.*

The *Cloverleaf* court detected three aspects of "ambiguity" as to whether *Russell Sage* should be read to imbue a state court's dismissal on timeliness grounds with interjurisdictional preclusive force. First, because the initial dismissal in *Russell Sage* implicated both the statute of limitations and the statute of frauds, *Cloverleaf* did not read *Russell Sage*'s holding "as a statement that a dismissal for lack of timeliness is, standing alone, a judgment 'on the merits.'" *Cloverleaf*, 572 F.3d at 96. Second, *Cloverleaf* noted that in *Russell Sage*, the motion to dismiss the first action was treated as one for summary judgment, which made preclusion "especially" appropriate in the view of the Court of Appeals. *Id.* As to the third distinction, *Cloverleaf* stated:

> [T]he court in *Russell Sage* was not confronted by the situation we face: a dismissal for lack of timeliness by a court in another jurisdiction with a shorter statute of limitations. Since that decision did not confront the question of whether a claim originally dismissed as time-barred should be precluded when later

13

reasserted in another jurisdiction with a longer statute of limitations, it should not
be understood as having settled that question.

*Id.* at 96.[6]

This takes us to the decision of the Court of Appeals in *Tanges*, which *Cloverleaf* read as

undermining *Russell Sage*. *Tanges* came to the Court of Appeals on a certified question from

this court as to whether a product liability suit brought by a New York plaintiff was barred by a

Connecticut statute setting forth time limitations on when product liability claims must be

brought. To answer the certified question, the Court of Appeals first considered whether the

statute at issue was "procedural" or "substantive" under New York's choice-of-law rules. The

court held that the statute at issue was a statute of repose constituting part of Connecticut's

substantive law. 710 N.E.2d at 251. In reaching that conclusion, the court contrasted statutes of

repose with statutes of limitation:

> In New York, Statutes of Limitation are generally considered procedural because
> they are "[v]iewed as pertaining to the remedy rather than the right." The
> expiration of the time period prescribed in a Statute of Limitations does not
> extinguish the underlying right, but merely bars the remedy. Nicely summarized
> elsewhere, "[t]he theory of the statute of limitations generally followed in New
> York is that the passing of the applicable period does not wipe out the substantive
> right; it merely suspends the remedy." Siegel, N.Y. Prac[tice] § 34, at 38 [2d ed.].

---

[6] Indeed, certain of the authorities relied on by *Bray* and *Russell Sage* for the proposition
that a dismissal on statute of limitations grounds was sufficiently close to a decision on the
merits can be read to support this same distinction. *See, e.g.*, *De Crosta v. A. Reynolds Constr.
& Supply Corp.*, 364 N.E.2d 1129, 1130 (N.Y. 1977) ("Where a plaintiff brings an action to
enforce a claim and is barred from proceeding thereon because of a Statute of Limitations'
defense which has been interposed, the judicial decision is on the merits and plaintiff is
precluded from thereafter maintaining another action to enforce the claim *in the same State*."
(emphasis added)); *Spindell v. Brooklyn Jewish Hosp.*, 317 N.Y.S.2d 963, 965 (App. Div. 2d
Dep't 1970) (dismissal on statute of limitations grounds "may be considered to be on the merits,
at least as far as the courts of New York are concerned, as to the point it decided"); David D.
Siegel, *New York Practice* § 34 (4th ed. 2005) ("[T]he application of the statute of limitations
usually dismisses the action as permanently as a final judgment on the merits, at least insofar as
further suit in New York is concerned.").

14

*Id.* at 253 (alterations in original) (other citations omitted).

*Tanges*, to be sure, was concerned with a choice-of-law issue, not the claim-preclusive effects of a dismissal based on a statute of limitations. *Cloverleaf* nonetheless read *Tanges* to indicate that the Court of Appeals does not take the view that a dismissal on timeliness grounds is "on the merits" for *res judicata* purposes. Such a reading of *Tanges* derives support from a passage in *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), a decision of the Supreme Court of the United States, describing the claim-preclusive effect of dismissals on statute of limitations grounds: "[T]he traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, *so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods.*" *Id.* at 504 (emphasis added) (citing Restatement (Second) of Conflict of Laws §§ 142(2), 143 (1969); Restatement of Judgments § 49 cmt. a (1942)).[7] Therefore, insofar as in New York, the expiration of the statute of limitations does not terminate the underlying right, it would follow from the "traditional rule" described in *Semtek* that a dismissal on timeliness grounds is not entitled to *res judicata* effect in jurisdictions where the applicable limitations period has not yet expired. *Cf.* 18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4441 (2d ed. 2002) (noting the "general conclusion that dismissal on limitations grounds merely bars the remedy in the first system of courts, and leaves a second system of courts free to grant a remedy that is not barred by its own limitations rules"); Restatement (Second) of Judgments § 19 cmt. f (1982) (same).

_____

[7] The Court made these observations in the context of holding that the claim-preclusive effect of dismissals by federal courts exercising diversity jurisdiction is governed by a federal common law rule that in turn incorporates the forum state's law of *res judicata*. *See* 531 U.S. at 509.

15

Our task in resolving *Bray* and *Cloverleaf* is further complicated by the fact that notwithstanding *Cloverleaf*'s reading of *Tanges*, many decisions of the Appellate Division have continued to invoke *Russell Sage*,[8] and no New York court that we are aware of has relied on *Tanges* to conclude that a statute-of-limitations dismissal was not "on the merits." Then again, none of these courts appears to have had occasion to consider whether a dismissal based on the expiration of a statute of limitations should be given preclusive effect in another jurisdiction where the claim would not be untimely.

**III.**

Given our reading that neither *Russell Sage* nor *Tanges* supplies the rule of decision for the case at bar and the significant and outcome-determinative nature of the question presented, we think certification is warranted.

Our discretion to certify is "principally guided by three factors":

First, certification may be appropriate if the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it. . . .

Second, the question on which we certify must be of importance to the state, and its resolution must require value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make. . . .

Third, we may certify if the question is determinative of a claim before us.

---

[8] *See, e.g.*, *Daved Fire Sys. Inc. v. N.Y.C. Health & Hosps. Corp.*, 847 N.Y.S.2d 195, 196 (1st Dep't 2007); *Sosa v. JP Morgan Chase Bank*, 822 N.Y.S.2d 122, 124 (2d Dep't 2006); *Palm Mgmt. Corp. v. Goldstein*, 815 N.Y.S.2d 670, 674 (2d Dep't 2006); *Ferranti v. N.Y.C. Prop. Clerk's Office*, 773 N.Y.S.2d 876, 876 (1st Dep't 2004); *Cold Spring Harbor Area Civic Ass'n v. Bd. of Zoning Appeals of Town of Huntington*, 762 N.Y.S.2d 392, 393 (2d Dep't 2003); *Karmel v. Delfino*, 740 N.Y.S.2d 373, 374 (2d Dep't 2002); *Marinelli Assocs. v. Helmsley-Noyes Co.*, 705 N.Y.S.2d 571, 574 (1st Dep't 2000); *see also Simmons v. N.Y.C. Health & Hosps. Corp.*, 894 N.Y.S.2d 750, 750 (1st Dep't 2010) (concluding that judgment dismissing prior action on statute of limitations grounds had claim-preclusive effect).

*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125-26 (2d Cir. 2011) (internal quotation marks, other ellipses, and citations omitted).

In our view, each of these factors counsels in favor of certification. First, based on our reading of *Russell Sage* and *Tanges*, we conclude that the Court of Appeals has not "squarely addressed" whether a New York court's judgment dismissing a case based on the expiration of a New York limitations period should have preclusive effect in another jurisdiction with a longer, unexpired limitations period. Second, we think that the Court of Appeals is well situated to address that significant question.[9] Third, the answer to the question we certify will fully resolve our disposition of this appeal.

"We have greatly benefited on many occasions from the guidance of the New York Court of Appeals," *O'Mara v. Town of Wappinger*, 485 F.3d 693, 699 (2d Cir. 2007), including on matters of New York's preclusion law, *see, e.g.*, *Green v. Montgomery*, 245 F.3d 142, 143 (2d Cir. 2001) (per curiam). In accordance with our preference that states determine the meaning of their own laws in the first instance, *see Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001), and because the outcome of this case turns on the answer to this significant question of New York law, we certify to the Court of Appeals the question stated below.

---

[9] Although the Supreme Court has recognized a federal interest in a Title VII plaintiff's ability to receive a trial *de novo* in federal court, *see Elliott*, 478 U.S. at 795-96, it is equally clear that this interest does not trump the preclusion rule of § 1738 when there is a prior state court judgment. The statutory directive that this court look to state preclusion law is unabated by the fact that the state's preclusion rules may impede the plaintiff's ability to bring her federal claims in a federal forum. *See, e.g.*, *San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 545 U.S. 323, 344-45 (2005); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381-82 (1985).

17

**CONCLUSION**

For the foregoing reasons and pursuant to New York Court of Appeals Rule 500.27 and Local Rule 27.2 of this court, we respectfully certify to the Court of Appeals the following question:

> When a plaintiff brings a discrimination claim before the New York State Division of Human Rights ("DHR") and commences an untimely Article 78 proceeding challenging the DHR's adverse determination of that claim, does the state court's dismissal of the Article 78 proceeding pursuant to the time limitations set forth in N.Y. Exec. Law § 298 amount to an adjudication "on the merits" for *res judicata* purposes, such that the plaintiff cannot litigate her claim in another jurisdiction with a longer, unexpired limitations period?

"As is our practice, we do not intend to limit the scope of the Court of Appeals' analysis through the formulation of our question, and we invite the Court of Appeals to expand upon or alter this question as it should deem appropriate." *10 Ellicott Square Court Corp.*, 634 F.3d at 126.

It is hereby **ORDERED** that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of the briefs, the appendix, and the record filed in this court by the parties. HDMJ shall bear all fees and costs that may be imposed by the New York Court of Appeals in connection with this certification. This panel will resume its consideration of this appeal after the disposition of this certification by the New York Court of Appeals.

18