14-713-cv
Cortes v. MTA New York City Transit

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2014

(Submitted:  February 19, 2015      Decided: September 4, 2015)

Docket No. 14-713-cv

- - - - - -   - - - - - - - - - - - - - - - - - - - - - - - - - - -

JUAN E. CORTES,

Plaintiff-Appellant,

v.

MTA NEW YORK CITY TRANSIT,

Defendant-Appellee.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  WINTER, POOLER, and SACK, Circuit Judges.

Appeal from a grant of summary judgment by the United States District Court for the Eastern District of New York (Eric N. Vitaliano, Judge) dismissing appellant's claims under the Americans with Disabilities Act.  We clarify the effect of prior administrative proceedings and arbitration awards in the dispute leading to the litigation and affirm in part, vacate in part, and remand.

> Stewart Lee Karlin (Natalia Kapitonova on the brief), The Law Offices of Stewart Lee Karlin, P.C., New York, NY, for Plaintiff-Appellant.

---

[*]The Clerk of the Court is directed to amend the case caption accordingly.

1

Robert Kenneth Drinan (Lewis S. Finkleman and Kristen M. Nolan on the brief), New York City Transit Law Department, Brooklyn, NY, for Defendant-Appellee.

WINTER, Circuit Judge:

Juan E. Cortes appeals from Judge Vitaliano's grant of summary judgment to MTA New York City Transit ("MTA"), dismissing appellant's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112-12117. Before bringing the present action, appellant filed a substantially similar disability discrimination claim with the New York State Division of Human Rights ("NYSDHR"), which dismissed it. Based on Collins v. New York City Transit Authority, 305 F.3d 113 (2d Cir. 2002), the district court gave almost preclusive weight to the NYSDHR's dismissal of this claim. Because Collins addresses only the effect of arbitration awards under a collective bargaining agreement and does not apply to the decisions of state administrative agencies, we vacate and remand the dismissal of appellant's disability discrimination claim. However, we affirm the dismissal of appellant's retaliation claim.

BACKGROUND

This is an appeal from a grant of summary judgment, and we view the factual record in the light most favorable to appellant. McGuinness v. Lincoln Hall, 263 F.3d 49, 52 (2d Cir. 2001).

On July 11, 1994, MTA hired appellant as a train conductor. He was promoted to passenger train operator in 1998. In late 2001, he became a work train (no passengers) operator. On October 15, 2006, appellant had a dispute with a supervisor. On that day or soon thereafter, he also injured his back. A subsequent MRI showed injury to four lumbar discs, and appellant's personal doctor ordered him not to work from November 3, 2006 until January 7, 2007.

Appellant's employment was governed by a collective bargaining agreement ("CBA") that required him, before returning to work, to undergo a full physical evaluation at MTA's Medical Assessment Center ("MAC") and to obtain a fit-for-duty certificate. On January 7, 2007, in the course of the physical evaluation, an EKG test revealed a potentially dangerous cardiac abnormality. MAC doctors barred appellant from operating trains until he had undergone complete cardiac testing. Because appellant's job was "safety sensitive," the MTA determined that there were no train-operator duties appellant could perform until he was medically cleared.

Appellant's doctor confirmed the abnormal EKG and referred him to a cardiologist, Dr. Jane Levine. On March 5, 2007, appellant submitted documentation to MAC showing that Dr. Levine confirmed the coronary artery disease diagnosis and, as a result, he could not perform train-operator duties. Dr. Levine

3

recommended additional diagnostic procedures including a nuclear stress test and a cardiac catheterization or, alternatively, a cardiac CT angiogram.

On March 20, 2007, appellant met with MAC doctors again. The stress test revealed coronary artery disease, but appellant refused to undergo a catheterization. Appellant claimed that he refused catheterization only because was waiting for his insurer's approval of an angiogram. Because appellant had not provided the requisite documentation, MAC doctors left the work restrictions in place and gave him until May 15, 2007 to submit the results of an angiogram. Appellant failed to submit the results by the deadline. Consequently, his work restrictions were changed from temporary to permanent, which allowed him to be reclassified to a position encompassing duties he was physically fit to perform.

In late August 2007, appellant received the results of the angiogram, which revealed no heart or artery disease. Appellant, however, did not give these results to the MTA and missed a September 25, 2007 appointment with MAC for a reclassification evaluation. At a rescheduled appointment on November 28, appellant produced the August diagnostic results. On March 31, 2008, based on the new information, the MTA doctors altered appellant's work restrictions to allow him to operate work (non-passenger) trains, as he had done since 2001.

4

On April 16, 2007, during the various medical examinations, appellant's counsel filed a complaint with the NYSDHR, claiming the MTA had illegally discriminated against him under state and federal law by failing to accommodate his disability, i.e., his cardiac problem and neck injury. On January 23, 2009, the NYSDHR issued a decision holding that appellant had not met his burden of proof on the discrimination claim. The NYSDHR found, in relevant part, the following facts. Appellant had not complied with the CBA requirement that he obtain a fit-for-duty certificate from MAC to return to work. Although the MTA was ready to consider lifting appellant's job restriction if further testing ruled out a heart condition serious enough to endanger passengers, appellant failed to submit the diagnostic results in a timely manner. As soon as appellant submitted the results of the further cardiac testing, the MTA modified his work restrictions and allowed him to return to operating work trains. Because appellant could not fulfill the essential duties of his safety-sensitive position as passenger train operator without medical clearance, the NYSDHR concluded that no reasonable accommodation would have been possible. The NYSDHR further noted that appellant never requested an accommodation for his disability. The NYSDHR opinion became final on January 25, 2010. The EEOC adopted its findings on June 10, 2012. 42 U.S.C. § 2000e-5(b) ("[T]he Commission shall accord substantial weight to

5

the final findings and orders made by state or local authorities . . . .").  Appellant did not challenge the NYSDHR's decision administratively or in state court.

On September 10, 2010, appellant commenced the present action by filing a pro se complaint against the MTA in the Eastern District of New York.  The complaint asserted claims under Title VII, the ADEA, and the ADA.[1]  42 U.S.C. §§ 2000e to 2000e-17, 29 U.S.C. §§ 621-634, 42 U.S.C. §§ 12112-12117.  The only facts alleged in the complaint were that "[I] have never had a medical appeal of my case according to our collective bargaining agreement" and "I had a neck injury 12-26-1996 and believe the Transit Authority is retaliating against me because of this."  J. App'x at 13.  The complaint did not assert discrimination because of appellant's back or cardiac conditions or retaliation because of his NYSDHR complaint.

The MTA moved for summary judgment, submitting, inter alia, a copy of the NYSDHR/EEOC order.  In response to the MTA's Rule 56.1 statement of material facts, appellant admitted that he had filed an NYSDHR complaint alleging that the MTA discriminated against him on the basis of his initial injury and his cardiac condition.  He also conceded that the NYSDHR had held a hearing

---

[1] Cortes withdrew his ADEA and Title VII claims and proceeded only on his ADA claim.  The district court nevertheless addressed and granted summary judgment to the defendants on Cortes's Title VII claims.  We therefore have addressed neither those portions of the district court's opinion nor Cortes's Title VII claims on appeal.

6

at which he was represented by counsel and gave sworn testimony. He did not contest any of the NYSDHR's findings of fact.

Appellant's response to the MTA's Rule 56.1 statement further stated, for the first time, that the alleged discrimination stemmed not only from an injury sustained at home and a verbal confrontation with a superior, but also from his cardiac condition and a neck injury suffered in 1996. The neck injury pre-dated by many years his promotion from conductor to train operator. He alleged that he was facing disciplinary charges "for being injured." J. App'x at 86. In addition, the parties' summary judgment briefing discussed additional acts of alleged disability discrimination during the period *after* Cortes returned to work, including restricted work assignments and overtime.

The district court granted summary judgment to the MTA. The court held that appellant's claims were not precluded by virtue of the NYSDHR's prior administrative ruling based on the same facts. With regard to appellant's disability discrimination claim, the court assigned substantial weight to the NYSDHR's findings of fact because they were the product of an "independent and unbiased" hearing. J. App'x at 121 (quoting Collins, 305 F.3d at 115). Relying on this court's opinion in Collins, 305 F.3d at 115, the court held that appellant "utterly fail[ed] to confront much less carry" the burden of showing that the NYSDHR's

7

decision was wrong as a matter of fact or that its impartiality was tainted. Instead of presenting the district court with "any evidence related to his 2007-2008 claims that was not already presented," appellant "rehash[ed]" the same facts and arguments he provided to the NYSDHR. Therefore, the court granted the MTA summary judgment on the ADA discrimination claims.

Appellant's briefing in the district court also claimed that he was retaliated against for filing a complaint with the NYSDHR. This claim "appear[ed] nowhere in his complaint." J. App'x at 122. Nonetheless, because appellant filed the complaint pro se and the court would have granted permission to amend it to add a retaliation claim, the court deemed the retaliation claim as properly before it.

However, the district court held that appellant failed to make out a prima facie retaliation case. Although he had filed an NYSDHR complaint, a protected activity of which the MTA had knowledge, and he was put under work restrictions, an adverse employment action, the district court held that appellant had not shown a causal connection between the NYSDHR complaint and the adverse employment action. It concluded that, because the NYSDHR complaint was filed in April 2007 and the claimed retaliation took place 14 months later, there was not even a "tenuous temporal connection" to suggest retaliatory intent. J. App'x at 124. The court moreover found that even assuming appellant could

show causation, the medical evidence clearly established that the MTA had a non-retaliatory basis to place appellant on work restrictions.  Therefore, the MTA was granted judgment on the retaliation claims as well.

DISCUSSION

We review the district court's grant of summary judgment <u>de novo</u>.  <u>See</u> <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 197 (2d Cir. 2014).  Summary judgment is not appropriate unless there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  To survive summary judgment, the nonmovant must merely show that "reasonable minds could differ as to the import of the evidence . . . in the record."  <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation marks omitted).

a) <u>ADA Claim</u>

Appellant argues that the district court misapplied <u>Collins</u> and our caselaw regarding the weight to be given the NYSDHR ruling.  <u>Collins</u> concerns the effect of binding arbitration pursuant to a collective bargaining agreement to which the employer was a party on a Title VII claim.[2]  The district court

---

[2] We treat <u>Collins</u> and the other Title VII cases cited in this opinion as applicable to Cortes's ADA claim because "the ADA explicitly incorporates all of the enforcement powers, remedies, and procedures of Title VII."  <u>Smith v. Perkins Bd. Of Educ.</u>, 708 F.3d 821, 827-28 (6th Cir. 2013); <u>cf.</u> <u>Joseph V. Athanasopoulos,</u>

9

appears to have equated such binding arbitration to a decision of a state administrative agency.  We agree that this was error and write to clarify the difference.

"ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973): A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (citing Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, 198 F.3d 68, 72 (2d Cir. 1999)).

A plaintiff establishes a prima facie case of discrimination by demonstrating that he "suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent."  Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 92 (2d Cir. 2013) (internal quotation marks and ellipses omitted).  Once the plaintiff shows this, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason for the adverse employment action."  Id. (internal quotation marks omitted).

---

648 F.3d 58, 64 (2d Cir. 2011) ("[W]e are aware of no distinction between the [ADA and Title VII] that would require affording a state court judgment a different preclusive effect.").

10

We will assume, without deciding, that appellant established a prima facie case by alleging that he was not allowed to return to work after being injured as well as alleging discriminatory treatment upon his initial return to work.[3] With respect to the first issue, the MTA countered with the NYSDHR's findings of fact as evidence of a legitimate non-discriminatory reason for barring appellant from working. The burden then shifted to appellant to produce evidence showing that the various reasons relied upon by the NYSDHR were a pretext. In response, appellant made arguments substantially similar to those he made in proceedings before the NYSDHR.

A claimant may bring federal ADA and Title VII claims even if they have been rejected in a state administrative proceeding. See Joseph v. Athanasopoulos, 648 F.3d 58, 62, 64 n.6 (2d Cir. 2011); see also Staats v. Cty. of Sawyer, 220 F.3d 511, 514 (7th Cir. 2000); Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 39 n.5 (1st Cir. 1998) (The ADA incorporates Title VII deferral procedures; therefore, Title VII precedents "apply with equal force in the ADA context").

---

[3] Despite the parties' briefing on this issue, the district court did not consider Cortes's allegations of disability discrimination upon his return to work in the form of restricted work assignments and overtime, instead apparently considering these contentions relevant only to appellant's retaliation claim. Although we take no position on the merits of these post-return allegations or whether they are properly exhausted, the district court is instructed to consider them on remand as part of its consideration of appellant's disability discrimination claim.

11

Because we do not give preclusive effect to state agency decisions unless they have been reviewed in a state court proceeding, see Nestor v. Pratt & Whitney, 466 F.3d 65, 73 (2d Cir. 2006) (citing Univ. of Tenn. v. Elliott, 478 U.S. 788 (1986)), an unreviewed NYSDHR decision is not binding on a trier of fact in an ADA action. The unreviewed findings of an agency are, however, admissible as evidence under Fed. R. Evid. 803(8)(A)(iii) as "factual findings from a legally authorized investigation" by a public office. See also Arroyo v. WestLB Admin., Inc., 54 F. Supp. 2d 224, 230 (S.D.N.Y. 1999), aff'd, 213 F.3d 625 (2d Cir. 2000); Henry v. Daytop Vill., Inc., 42 F.3d 89, 96 (2d Cir. 1994).

Discrimination claims are also often brought in federal court after being submitted to binding arbitration pursuant to a collective bargaining agreement. In that context, we have held that "a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing . . . has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive." Collins, 305 F.3d at 115. When an employee submits his claim of unlawful treatment to arbitration, "a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link." Id. at 119. Therefore, when an arbitrator's "decision follows an evidentiary

12

hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact -- e.g. new evidence not before the tribunal -- or that the impartiality of the proceeding was somehow compromised." Id.

The district court appears to have equated binding arbitration and judicially unreviewed agency findings. It held that, based upon Collins, appellant "utterly fail[ed] to confront much less carry" the burden of showing that the NYSDHR's decision was factually wrong or biased. J. App'x at 121. Although it is not clear that application of the distinction between binding arbitration under a collective bargaining agreement and an agency decision would alter the outcome in this particular case, we expressly reject the view that Collins applies to agency decisions.

In Collins, the appellant had challenged his termination by his employer through his collective bargaining agreement's multi-step grievance procedure ending in binding arbitration. 305 F.3d at 115-16. His grievance claimed racial discrimination and retaliation. Id. The arbitration board upheld the termination. Id. at 117. In Collins, we held that the appellant failed to make out a prima facie case under Title VII because he did not show a causal link between the employer's alleged bias and his termination. Id. at 119.

13

Collins had "challenged the Transit Authority's decision to fire him and was finally discharged only after the arbitration board made an independent inquiry, including the taking of evidence." Id. at 118. The arbitration board was a "fully independent and unbiased decisionmaker." Id. at 119. We further noted that "the CBA established [the arbitration] process both to deprive the Transit Authority of the power to terminate an employee unilaterally and to ensure fair and probatively sound decisions for aggrieved employees." Id. "Appellant's termination occurred, therefore, only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination. This fact is highly probative of the absence of discriminatory intent in that termination." Id.

In Collins, therefore, we held only that while "a negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee[,] . . . a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link." Id. (internal citation omitted). Under such circumstances, when an arbitral decision "follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact

14

-- e.g. new evidence not before the tribunal -- or that the impartiality of the proceeding was somehow compromised." Id.

We note here that Collins is applicable only to decisions of a tribunal to which an employer has contractually surrendered the final power to discipline or discharge employees. The analysis Collins requires is the same as that required in all Title VII or ADA cases regarding a causal connection between the prohibited motive and the adverse employment action. If a company's Vice-President for sales is discharged, the bias of a janitorial foreman will be irrelevant because the foreman is not the decision-maker regarding the Vice-President's employment. Similarly, when the final decision on discipline or discharge is made by an arbitrator whose lack of bias is conceded, enough evidence linking the employer's motive and the arbitration decision must be proffered to allow a reasonable trier of fact to find that the decision was affected by acts resulting from that motive. In this case, appellant did not submit to binding arbitration under his CBA. Therefore, appellant was not required to meet the burden established by Collins for Title VII plaintiffs to survive a motion for summary judgment or at trial.

Again, the NYSDHR's findings are admissible evidence, and we hold only that consideration of them on a motion for summary judgment, or, if appropriate, at a trial, is not governed by

Collins. We of course intimate no view on the outcome of further proceedings on summary judgment.

b) Retaliation Claim

On the retaliation claim, appellant did not make out a prima facie case. While he participated in a protected activity known to the MTA and suffered an adverse employment action, we agree with the district court that he failed to proffer enough evidence to support a finding of a causal connection between the protected activity and the adverse employment action. See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases). The filing of the NYSDHR complaint in April 2007 is too remote from the alleged adverse employment action in June 2008 to support by itself an inference of retaliation. The record indicates no other retaliatory behavior. Indeed, appellant was allowed to return to work after he produced the appropriate diagnostic results.[4] Thus, we affirm the district court's dismissal of appellant's retaliation claim.

CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed as to appellant's retaliation claims, but the dismissal of the ADA discrimination claims is vacated and remanded.

---

[4] Appellant does not argue that those results entitled him to return to passenger-train operation.