Ivy FEATHERSTONE, Plaintiff,

v.

COLUMBUS PUBLIC SCHOOLS, et al., Defendants.

No. 96 CV 00128.

United States District Court, S.D. Ohio, Eastern Division.

March 4, 1999.

*OPINION AND ORDER*

MARBLEY, District Judge.

This matter is before the Court on Defendant Columbus Public Schools' and De-fendant Columbus Education Association's Motions For Summary Judgment. For the following reasons, Defendants' Motions are **GRANTED**.

**I.**

On April 26, 1995, Defendant Columbus Public Schools (the "Board of Education") informed Plaintiff Ivy Featherstone of its intention to terminate his employment. Plaintiff had been a teacher in the Columbus Public School system since 1966, much of that time with the Indianola Middle School. At all times during his employment, Plaintiff was a member of Defendant Columbus Education Association (the "Union"). Pursuant to Ohio Revised Code § 3319.16, Plaintiff timely filed a written demand for hearing before a referee. Charlotte Coleman Eufinger was appointed as referee and the Board of Education set the hearing.

The hearing lasted sixteen days and produced in excess of 2,000 pages of transcript. Several witnesses testified and evidence was presented by all parties. At the conclusion of the hearing, Referee Eufinger made factual findings, and conclusions of law, and issued a twenty-five page Report and Recommendation concluding that Plaintiff's proposed dismissal was for just cause, and recommending Plaintiff's termination. The Board of Education accepted the referee's recommendation and terminated Plaintiff's employment.

Plaintiff timely filed an appeal in the Franklin County Court of Common Pleas pursuant to Revised Code § 3319.16; however, Plaintiff voluntarily dismissed the appeal. Subsequently, Plaintiff brought this action alleging violations of his civil rights under 42 U.S.C. §§ 1981 and 1983 against the Board of Education, breach of the duty of fair representation against the Union and John Grossman, the Union's President, and various state law claims.

**II.**

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

### III.

■ "When the factfinding of a state agency is involved, a federal court must accord such findings the same degree of preclusive effect that they would receive in the courts of that state." *Noyes v. Channel Products, Inc.,* 935 F.2d 806, 809 (6th Cir.1991) (*citing University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)). In Ohio, it is well settled that administrative proceedings are entitled to preclusive effect when conducted in a judicial nature, affording the parties an ample opportunity to litigate the issues involved in the proceeding. *See Grava v. Parkman Township,* 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995) (*citing In Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals,* 31 Ohio St.3d 260, 263, 510 N.E.2d 373 (1987)). "[P]roceedings of administrative agencies are considered quasi-judicial if there is notice, a hearing, and an opportunity for introduction of evidence." *Superior's Brands Meats, Inc. v. Lindley,* 62 Ohio St.2d 133, 136, 403 N.E.2d 996 (1980) (*quoting In State ex rel. Republic Steel Corp. v. Ohio Civil Rights Comm.,* 44 Ohio St.2d 178, 184, 339 N.E.2d 658 (1975)).

The Board of Education seeks dismissal of the claims brought against it because a § 3319.16 termination hearing was held, finding Plaintiff was discharged for just cause. The Board of Education maintains, therefore, that this Court must give full faith and credit to the Board's administrative fact-finding determinations, and dismiss the claims against the Board of Education on grounds of res judicata. The Supreme Court of Ohio has not ruled dispositively on whether an unreviewed decision of a board of education, reached pursuant to § 3319.16, is entitled to preclusive effect. This Court, however, sees no reason that the doctrine of res judicata should not apply to board of education termination decisions.

■ When the board of education seeks to terminate a tenured teacher, such as Plaintiff, it must follow the procedures set forth in § 3319.16. *See* OHIO REV.CODE § 3319.16. This section provides for notice,

a hearing by neutral referee, representation by counsel, presentation of evidence and witnesses under oath, and cross-examination. *See id.* In short, a hearing conducted pursuant to § 3319.16 is judicial in nature, and has the indicia of a judicial proceeding. The recommendation of the hearing referee to terminate a tenured employee may be accepted or rejected by the board of education, but the final decision of the board is appealable in the Ohio Court of Common Pleas, and Ohio appellate courts, if necessary. Thus, as § 3319.16 termination hearings are judicial in nature and provide for adequate state appellate review, it is logical that federal courts should give preclusive effect to unreviewed board of education factual determinations made pursuant to § 3319.16 termination hearings. This view is consistent with relevant case law considering the preclusive effect of state administrative agencies decisions.

In *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court considered whether factual determinations of state administrative agencies are entitled to preclusive effect in federal court. In *Elliott,* the respondent requested an administrative hearing after being informed that he would be discharged for inadequate work performance and misconduct on the job. The respondent in *Elliott* also filed suit in federal district court, alleging that his proposed discharge was racially motivated. The administrative hearing proceeded, and after the presentation of extensive evidence, the ALJ concluded that the University's actions were not racially motivated. The respondent did not seek review of the administrative proceedings in state court; instead, he pursued civil rights claims in federal court. The district court held that the administrative ruling was entitled to preclusive effect. Respondent appealed to the Court of Appeals for the Sixth Circuit, which reversed, holding that federal courts are not bound by the unreviewed findings of state administrative agencies.

The Supreme Court affirmed in part and reversed in part, holding that when an administrative agency is acting in a judicial capacity and resolving disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the state's courts. *Id.* at 799. The Court based its decision on issues of efficiency—avoiding the cost and vexation of repetitive litigation, the public's interest in conserving judicial resources—and issues of federalism, as expressed through the Full Faith and Credit Clause of the Constitution.[1]

In *Nelson v. Jefferson County,* 863 F.2d 18 (6th Cir.1988), the Sixth Circuit interpreted *Elliott* and fashioned a three-step test for determining whether a state administrative agency's factfinding determinations are entitled to preclusive effect in a subsequent federal action. First, the court must determine whether the agency acted in a judicial capacity. *Id.* at 19. "An administrative board acts in a judical capacity when it hears evidence, give the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings." *Id.* Second, the court must determine whether the agency's decision would have preclusive effect under applicable state law. *See id.* Third, the court must determine whether the federal action seeks to litigate issues already determined by the state agency. *See id.* Thus, any issues not necessarily involved in and decided by the administrative agency, will not be preclusive in a subsequent federal court action. *See id.* at 19–20 *(citing Barnes v. McDowell,* 848 F.2d 725, 730 (6th Cir.1988)).

In this case, Plaintiff seeks to relitigate the basis for his termination by bringing this action under 42 U.S.C. § 1983. Under

1. U.S. CONST. art. IV, § 1.

the *Nelson* rationale, Plaintiff had ample opportunity during the termination hearing to show that his termination was improper. Plaintiff's termination hearing lasted sixteen days and produced over 2,000 pages of transcript. Evidence was presented at the hearing and witnesses testified under oath concerning the circumstance surrounding Plaintiff's termination. Plaintiff had the opportunity to have counsel represent him, but refused, yet was afforded a full and fair opportunity to argue his claim of wrongful termination. In addition, Plaintiff had an opportunity to appeal his termination to the state courts of Ohio pursuant to § 3319.16 by seeking review first in the Court of Common Pleas, and then in the Ohio appellate courts, if necessary. *See* OHIO REV.CODE § 3319.16.[2] Thus, the termination hearing was judicial in nature and satisfies the first prong of the *Nelson* preclusion test.

Although under Ohio law it is unclear whether § 3319.16 termination hearings are entitled to preclusive effect, Ohio law is settled that state administrative proceedings are entitled to preclusive effect when conducted in a judicial nature, *i.e.*, affording the parties an ample opportunity to litigate the issues involved in the proceeding. *See Grava v. Parkman Township*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995) (holding that subsequent action barred by res judicata where party had full and fair opportunity to present case before zoning board). There is nothing in the statutory language of § 3319.16 or in the case law suggesting that Ohio would not give preclusive effect to § 3319.16 termination hearing determinations, in the same manner that Ohio gives preclusive effect to other state administrative decisions. The Court, therefore, finds no reason to deny § 3319.16 termination hearings the preclusive effect given to other administrative determinations, when conducted in a judicial nature, giving the parties a fair opportunity to litigate their claims.

Plaintiff asserts here, as in his termination hearing, that the Board of Education terminated his employment because of certain letters that he wrote to the media critical of the Positive Effort For Adjustment and Knowledge ("PEAK") program.[3] Plaintiff also maintains that his placement in the Peer Assistance Review ("PAR") program and subsequent termination violated his Fourteenth Amendment right to due process and was racially motivated.[4] In short, Plaintiff asserts the same arguments now that he asserted during his termination hearing before Referee Eufinger. These issues were decided in the termination hearing; and this Court cannot allow Plaintiff a second bite at the apple, *i.e.*, a second chance to assert that the Board of Education terminated his employment for improper reasons.

Plaintiff may not use the federal court system for purposes designed to be addressed in the state courts of Ohio. Under *Elliott* and *Nelson*, this Court is required to give preclusive effect to the factual determinations of the state administrative hearing held pursuant to § 3319.16, finding that Plaintiff was terminated for just cause.[5] Thus, the Court will not revisit

2. Plaintiff voluntarily dismissed these appellate remedies.

3. PEAK is a tutor/mentoring program for children who are suspended from class, and are serving their suspension in-school. A teacher in the program is supposed to be a role model and motivational influence for the kids.

4. One of the goals of the PAR program is to provide "wayward" teachers with some direction and counseling in an attempt to get teachers "back on track."

5. In both *Elliott* and *Nelson,* as in this case, the claimant asserted claims arising under § 1983. There is little question that where state law provides for fair procedures for the litigation of federal claims such as § 1983 claims, state administrative agency determinations concerning the facts and issues involved in such claims are entitled to preclusive effect. *See Elliott,* 478 U.S. at 796–99.

the basis for Plaintiff's termination. That issue is res judicata.

## IV.

The Union contends that this Court does not have jurisdiction over Plaintiff's claim of breach of the duty of fair representation because the State Employment Relations Board ("SERB") exercises exclusive jurisdiction over claims brought pursuant to Ohio Revised Code § 4117. The Court agrees.

It is well recognized that SERB is vested with exclusive initial jurisdiction over claims brought by public employees pursuant to § 4117. *See Holloman v. Greater Cleveland Regional Transit Authority,* 930 F.2d 918, 1991 WL 54885, at *3 (6th Cir.1991); *Franklin County Law Enforcement Association v. Fraternal Order of Police, Capital City Lodge No. 9, et al.,* 59 Ohio St.3d 167, 170, 572 N.E.2d 87 (1991). A public employee is any person employed by a public employer. *See* OHIO REV.CODE § 4117.01(C). A public school board of education is classified as a public employer under § 4117. *See* OHIO REV. CODE § 4117.01(B). A public employee's claim of breach of duty of fair representation is governed by Revised Code 4117.11(B)(6). In Ohio, therefore, when a public employee brings an unfair labor practice claim, such public employee must first bring his or her claim with SERB, not the state or federal trial courts. *See Franklin County,* 59 Ohio St.3d at 170, 572 N.E.2d 87.

In this case, Plaintiff is an employee of the Board of Education, and thus, is a public employee for the purposes of § 4117.01(C). Plaintiff's claim of breach of duty of fair representation against the Union, therefore, must first be brought with SERB, not the federal district court. Jurisdiction over the employment rights of public employees properly rests initially with SERB, and Plaintiff must exhaust his state remedies before seeking redress in this Court.

## V.

For the foregoing reasons, Defendant Columbus Public Schools' and Defendant Columbus Education Association's Motions For Summary Judgment are hereby **GRANTED.**

**IT IS SO ORDERED.**