RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CAROL ANN SMITH,

                  *Plaintiff-Appellant*,


      *v.*


PERKINS BOARD OF EDUCATION; DR. JAMES
P. GUNNER, individually and in his capacity
as Superintendent of the Perkins Local
School District; STEPHEN P. FINN,
individually and in his capacity as Principal
of Briar Middle School,

                *Defendants-Appellees*,


STEVE SCHUSTER, et al.,

                *Defendants.*

No. 12-3187

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:11-cv-560—Jack Zouhary, District Judge.

Argued: January 25, 2013

Decided and Filed: February 27, 2013

Before: CLAY, COOK, and ROTH,[*] Circuit Judges.

_____

## COUNSEL

**ARGUED:** Edward G. Kramer, KRAMER & ASSOCIATES, LPA, Cleveland, Ohio,
for Appellant. Teresa L. Grigsby, SPENGLER NATHANSON P.L.L., Toledo, Ohio,
for Appellees. **ON BRIEF:** Edward G. Kramer, KRAMER & ASSOCIATES, LPA,
Cleveland, Ohio, for Appellant. Teresa L. Grigsby, SPENGLER NATHANSON P.L.L.,
Toledo, Ohio, for Appellees.

_____

[*] The Honorable Jane R. Roth, Senior Circuit Judge for the United States Court of Appeals for the
Third Circuit, sitting by designation.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.   Plaintiff Carol Ann Smith appeals the district court's grant of summary judgment in favor of her former employer, the Perkins Board of Education, as well as its superintendent and the principal of the middle school at which she was a teacher.   Plaintiff alleges that she was terminated on account of her age in violation of Ohio Rev. Code § 4112.14, that she was denied reasonable accommodations and was the victim of retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, and parallel provisions of state law, and that Defendants committed the common-law tort of intentional infliction of emotional distress.   A state administrative hearing determined that Plaintiff had been terminated for "just cause," and Defendants attempt to use that finding to preclude Plaintiff from further litigating issues related to her termination.   For the reasons that follow, we **AFFIRM** the grant of summary judgment with respect to Plaintiff's age discrimination claim, but **REVERSE** with respect to the remaining claims and **REMAND** for further proceedings.

**BACKGROUND**

Plaintiff became a teacher with the Perkins Local School District in 1976.   In 1992, she was diagnosed with Type 2 diabetes, a condition that deteriorated until, by 1999, she required insulin injections.   Prior to 2008, Plaintiff received positive performance evaluations and was never subject to disciplinary action.   In September 2008, Plaintiff was summoned to a disciplinary conference to address allegations that she had been sleeping during class.   Plaintiff claims that she was not sleeping but rather exhibiting symptoms of her diabetes.   Nevertheless, she was formally reprimanded by Principal Stephen Finn, who also scheduled a series of performance evaluations.

After she was reprimanded, Plaintiff requested numerous accommodations to help deal with her disability, including: 1) requiring certain staff to become familiar with

and trained in recognizing symptoms of diabetes; 2) requesting that staff assist her if she appears asleep by providing food or a drink, or if necessary, contacting emergency services; and 3) providing short breaks so that she might inject herself with insulin in private. In response to Plaintiff's requests, Superintendent Gunner agreed to allow her to keep snacks in her classroom and inject herself with insulin in the school nurse's office if she first called the office and waited for classroom coverage to arrive. Superintendent James Gunner also agreed to allow Plaintiff to disseminate information to students and staff regarding her disability.

After Plaintiff and the school agreed to these accommodations, Plaintiff was suspended on three separate occasions, once for missing two class periods during which Plaintiff contends that she was injecting herself with insulin, once for repeated incidents of sleeping in class, and once for using Playgirl Magazine as an example of yellow journalism during a class discussion. As a result of these incidents, on April 14, 2010, the Perkins Board of Education decided to terminate Plaintiff's teaching contract on the basis of "good and just cause."

As a public school teacher, Plaintiff was entitled to request an administrative hearing before a neutral referee to determine whether her termination was in fact supported by good and just cause. *See* Ohio Rev. Code § 3319.16. Plaintiff requested such a hearing, which was conducted on July 21–22 and August 11–12, 2010. At the time of the termination hearing, Plaintiff was 71 years old. The referee heard testimony from Principal Finn as well as several other administrators and students that Plaintiff had repeatedly fallen asleep during class. Plaintiff maintained that her disability caused her to appear as if she were sleeping, but that she was actually awake. Plaintiff further asserted that the school administration purposefully scheduled her to supervise classes at opposite ends of the building so that she would be tardy.

After hearing the testimony of 27 witnesses and receiving 129 documentary exhibits into evidence, the referee concluded in a written decision on October 9, 2010, that Plaintiff's sleeping during class and her tardiness to other classes constituted "good and just cause" for her termination. On that basis, the referee recommended that the

board terminate Plaintiff's teaching contract.  Pursuant to state law, Plaintiff could have appealed the referee's decision to the court of common pleas.  *See* Ohio Rev. Code § 3319.16.

Instead, on March 17, 2011, Plaintiff filed a complaint in the United States District Court for the Northern District of Ohio and alleged four counts: 1) age discrimination in violation of Ohio law; 2) failure to make reasonable accommodations in violation of the ADA and similar provisions of state law; 3) retaliation for engaging in protected activity in violation of the ADA and state law; and 4) intentional infliction of emotional distress.

On September 15, 2011, Defendants filed a motion for summary judgment on their seventeenth affirmative defense—that Plaintiff's age discrimination claim is foreclosed by Ohio Rev. Code § 4112.14(C) and the remaining claims are barred by the doctrine of collateral estoppel.  While that motion was pending, the parties filed briefs on a discovery dispute arising from Plaintiff's request to depose a former member of the board of education on discussions held during executive sessions of the board.  On October 15, 2011, Plaintiff filed a response to Defendants' motion for summary judgment, arguing that her claims were not barred either by statute or by the doctrine of collateral estoppel.  Along with her response, Plaintiff filed a detailed affidavit describing her claims and the circumstances which led to her termination.  Three days later, the district court ordered that the pending discovery dispute be held in abeyance pending its decision on summary judgment.  Plaintiff has represented that the parties had an understanding that discovery would be put on hold until the district court resolved the collateral estoppel issues in the pending summary judgment motion.

On January 12, 2012, the district court granted summary judgment to Defendants on all claims, finding that Count One was not authorized by statute and that Count Three was barred by collateral estoppel.  Having found that collateral estoppel applied, the district court could have resolved Counts Two and Four in a similar fashion, but instead determined—without the benefit of briefing or argument from the parties—that Count

Two failed on the merits and that Count Four had been insufficiently pleaded.  Plaintiff
filed a timely Notice of Appeal.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*.  *Ciminillo v.
Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).  Summary judgment is proper "if the
movant shows that there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a
material fact is genuine "if the evidence is such that a reasonable jury could return a
verdict for the non-moving party."  *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551
(6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In
reviewing the record, we view the factual evidence in the light most favorable to the
nonmoving party, and draw all reasonable inferences in that party's favor."  *Slusher v.
Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citations omitted).  In reviewing Plaintiff's
claims under Ohio law, this Court applies state law in accordance with the currently
controlling decisions of the Ohio Supreme Court.  *Metz v. Unizan Bank*, 649 F.3d 492,
496 (6th Cir. 2011).

## I.        Age Discrimination Under Ohio Rev. Code § 4112.14

Plaintiff alleges that Defendants terminated her employment in violation of Ohio
statutes prohibiting age discrimination in employment.[1]  Ohio Rev. Code § 4112.14
states, in relevant part:

> (A) No employer shall . . . discharge without just cause any employee
> aged forty or older who is physically able to perform the duties and
> otherwise meets the established requirements of the job.
>
> . . . .
>
> (B) Any person aged forty or older who is . . . discharged without just
> cause by an employer in violation of division (A) of this section may
> institute a civil action against the employer.

---

[1]Plaintiff also pursues relief for age discrimination under Ohio Rev. Code § 4112.99, which
authorizes a cause of action for any violation of the state's civil rights laws. The limitations imposed by
§ 4112.14(C) apply equally to claims brought under that section. *See Meyer v. United Parcel Serv., Inc.*,
909 N.E.2d 106, 117 (Ohio 2009) (holding that the cause of action under § 4112.99 "undoubtedly falls
within the ambit of R.C. 4112.14(C)").

. . . .

> (C) The cause of action described in division (B) of this section . . . shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause.

Subsection (C) prohibits an employee from bringing a cause of action for age discrimination if her termination has already been arbitrated and found to be for just cause. The Ohio Supreme Court has held that an employee need not have participated in an actual arbitration proceeding, but rather that the "functional equivalent of arbitration" will suffice to bar an action for age discrimination under § 4112.14(C). *See Meyer v. United Parcel Serv., Inc.*, 909 N.E.2d 106, 116 (Ohio 2009).

An employee grievance review process is the "functional equivalent of arbitration" if it is characterized by "indicia of impartiality" and has sufficient procedural safeguards to protect the rights of the parties involved. *See Hopkins v. United Parcel Serv., Inc.*, No. C-990392, 2000 WL 279228, at *2 (Ohio Ct. App. Feb. 11, 2000); *see also Meyer*, 909 N.E.2d at 116 (finding that an employee grievance procedure was the equivalent of arbitration for purposes of § 4112.14(C)). The teacher termination proceeding that Plaintiff requested pursuant to Ohio Rev. Code § 3319.16 ensures procedural safeguards at least equivalent to those in an arbitration. The statute requires that a school board provide a teacher with notice of its intent to consider terminating the teacher's contract, with "full specification of the grounds for such consideration." Ohio Rev. Code § 3319.16. The teacher can then demand a hearing before a neutral referee. *Id.* Both the teacher and the school board are statutorily entitled to do all of the following: be present at the hearing, obtain and be represented by counsel, conduct direct and cross-examinations of witnesses under oath, have a full stenographic record taken, and compel the presence of witnesses by means of subpoenas. *Id.* After the hearing, the referee must submit his or her report to the school board within ten days, and the board must vote to accept or reject the referee's recommendation. *Id.* If the board votes to terminate the teacher, it must state the grounds for termination, and the teacher can then appeal the decision to the court of common pleas. *Id.*

The termination procedures under § 3319.16 provide teachers with numerous procedural safeguards that are at least as robust as those in an arbitration. *See Featherstone v. Columbus Public Sch.*, 39 F. Supp. 2d 1020, 1022–23 (S.D. Ohio 1999) (finding that a teacher termination proceeding is "judicial in nature" because it guarantees notice, a hearing, and an opportunity for the introduction of evidence). Accordingly, we find that the teacher termination proceeding is the "functional equivalent of arbitration" for purposes of § 4112.14(C). That subsection prohibits the litigation of age discrimination claims when an arbitrator or its equivalent has determined that an employee's termination was supported by just cause.[2] Plaintiff's termination hearing resulted in just such a determination, and her age discrimination claim is therefore barred.

## II.    Collateral Estoppel and the ADA

Unlike Plaintiff's age-discrimination claim, Plaintiff's claims under the ADA are not barred by statute. Instead, Defendants argue that they are barred by the common law doctrine of collateral estoppel. Defendants assert that because the referee in the teacher termination proceeding concluded that Plaintiff had been terminated for just cause, she is now precluded from claiming that she was terminated because of discrimination.

In general, the findings of state administrative agencies are given preclusive effect by the federal courts. "[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). The Supreme Court in *Elliott* determined that, as a matter of federal

---

[2]For the first time in her reply brief, Plaintiff argued that § 4112.14(C) deprives her of a property interest protected by the Due Process Clause of the Fourteenth Amendment. Even if this argument had been properly preserved by being raised in her opening brief, *see Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010), it is without merit. Although a cause of action may constitute a property interest, and a state cannot deprive an individual of property without due process of law, states are free to create causes of action and define the circumstances in which they are and are not available. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982).

common law, federal courts must give preclusive effect to state administrative findings just as they are statutorily required to give preclusive effect to the findings of state courts under the Full Faith and Credit Act, 28 U.S.C. § 1738. *See id.* Applying the doctrine of collateral estoppel to unreviewed state agency findings, the *Elliott* Court reasoned, was consistent with § 1738, precedent which required preclusive effect to be given to the findings of federal administrative agencies, and the purposes of the doctrine. *See id.* at 796–99.

However, the *Elliott* Court recognized a significant exception to the general application of collateral estoppel to state agency decisions. In claims brought under Title VII of the 1964 Civil Rights Act, the Court held that Congress' detailed remedial scheme precluded the use of collateral estoppel. *See id.* at 795–96. Because the Court's formulation of the general rule was based on federal common law, it held that Congress could displace the doctrine in certain statutory contexts if it intended that collateral estoppel should not apply. *Id.* at 795. Such was the case with Title VII. The Court considered the effect of one of Title VII's provisions which required the EEOC to give "substantial weight" to the findings of state or local administrative agencies. *Id.* (citing 42 U.S.C. § 2000e-5(b)). The Court found that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id.* The Court further recognized Congress' intent that Title VII plaintiffs receive *de novo* trials in federal court, citing a prior decision that found collateral estoppel principles inapplicable to findings by federal agencies in the Title VII context. *Id.* at 795–96 (citing *Chandler v. Roudebush*, 425 U.S. 840 (1976)).

Based on similar reasoning, the Supreme Court later held collateral estoppel principles inapplicable to claims brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). The Court found that although Congress is presumed to act against the background of common-law adjudicatory principles like collateral estoppel, it can overcome that presumption by either expressly or impliedly evincing its intent to the contrary. *Id.* at 108–10. Just as it had done in *Elliott*, the Court examined the statute and

found that various provisions demonstrated Congress' implicit assumption that unreviewed state agency determinations would not preclude ADEA plaintiffs from seeking relief in federal court. *See id.* at 110–14.

Although the Supreme Court has held that the doctrine of collateral estoppel does not apply to claims under Title VII and the ADEA,[3] it has never decided the status of collateral estoppel in the context of the ADA. However, using *Elliott* and *Solimino* as a guide, we find that common law collateral estoppel principles do not apply to claims brought under the ADA because Congress has demonstrated its intent that unreviewed state administrative findings not have preclusive effect in this statutory context. The analysis is straightforward because the ADA explicitly incorporates all of the enforcement powers, remedies, and procedures of Title VII. *See* 42 U.S.C. § 12117. In *Elliott*, the Supreme Court focused on the fact that the EEOC is statutorily required to give "substantial weight" to the findings of state authorities, strongly implying that the EEOC and the federal courts are not required to give *preclusive* effect to those findings. *See Elliott*, 478 U.S. at 795. The ADA specifically incorporates this very provision. *See* 42 U.S.C. § 12117 (stating that the procedures set forth in 42 U.S.C. § 2000e-5 (Title VII) are the same enforcement procedures available to a person alleging disability discrimination under the ADA). Therefore, the logic used by the Supreme Court in the context of Title VII applies identically to the ADA; Congress would not have required the EEOC to give "substantial weight" to state agency findings on ADA claims if it intended for those findings to have preclusive effect.

Every court of appeals to have addressed the issue has likewise determined that unreviewed state agency findings do not have preclusive effect in later federal court proceedings under the ADA. *See Joseph v. Athanasopoulos*, 648 F.3d 58, 64 n.6 (2d Cir. 2011) (finding "no distinction" between the ADA and Title VII that would justify different preclusion rules); *Stone v. Dep't of Aviation*, 290 F. App'x 117, 123 n.3 (10th Cir. 2008) (finding that *Elliott* governs both Title VII and ADA claims); *Staats v. Cnty.*

---

[3]Notably, the doctrine of collateral estoppel is applicable in statutory contexts in which Congress has not explicitly or implicitly supplanted the common law default rule. For example, collateral estoppel principles apply to claims brought under 42 U.S.C. § 1983. *See Elliott*, 478 U.S. at 799.

*of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000) ("Although [the plaintiff's] claims arise under the ADA . . . , not Title VII, we think the logic of . . . *Elliott* applies equally to other federal anti-discrimination statutes."); *Medeiros v. City of San Jose*, 188 F.3d 514, at *1 (9th Cir. 1999) (table); *Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 n.5 (1st Cir. 1998).

Also persuasive is the fact that Congress enacted the ADA after the Supreme Court decided *Elliott*, and it was against the backdrop of that decision that Congress wholesale incorporated the very part of Title VII on which the *Elliott* Court had relied. *See Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 326 ("It is a settled canon of statutory construction that courts will presume Congress was well aware of the prevailing law when it enacted a statute."). Congress should be deemed to have supplanted the default collateral estoppel rules when it enacted the ADA, just as it did with the identical enforcement provisions in Title VII. *See Elliott*, 478 U.S. at 795. Therefore, the district court erred when it applied the doctrine of collateral estoppel to Plaintiff's ADA claims.

## III. The *Sua Sponte* Grant of Summary Judgment on Alternative Grounds

The district court granted Defendants' motion for summary judgment, but instead of adopting their arguments as to all of Plaintiff's claims, it *sua sponte* resolved two of Plaintiff's claims on alternative grounds. We review for an abuse of discretion the district court's decision to grant summary judgment *sua sponte*. *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005) (citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000)). If we find that the district court abused its discretion, we will "reverse and remand to provide the district court the opportunity to review all of the evidence before making a substantive decision." *Id.*

After giving notice and time to respond, a district court may grant summary judgment on grounds not raised in a party's motion for summary judgment. *See Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959 (6th Cir. 2007). In 2010, the Federal Rules of Civil Procedure were revised to formally recognize that such a

procedure had developed in practice. *See* Fed. R. Civ. P. 56, advisory committee's note. The new Rule 56(f), titled "Judgment Independent of the [Summary Judgment] Motion," states: "After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f).

Entry of summary judgment on grounds not raised or argued by the parties is "discourage[d]," *Excel Energy*, 246 F. App'x at 959, but the district court may do so "in certain limited circumstances, 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence,'" *Shelby Cnty. Health Care Corp.*, 203 F.3d at 931 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). "The key inquiry is whether the losing party was on notice that he had to muster the necessary facts to withstand summary judgment, lest he face the dismissal of his claims." *Excel Energy*, 246 F. App'x at 959–60. However, even when the district court fails to provide adequate notice to the party against whom summary judgment is granted, its judgment will be upheld unless the losing party can demonstrate prejudice. *Id.* at 960. Otherwise, "remanding the case to the district court would merely entail an empty formality with no appreciable possibility of altering the judgment." *Id.* The inquiry is thus two-fold: losing parties must demonstrate both that they lacked sufficient notice of the district court's action and that they suffered prejudice as a result.

### A.    Notice

"[T]his Court looks to the totality of the proceedings below to determine whether the losing party had sufficient notice of the possibility that summary judgment could be granted against it." *Turcar, LLC v. I.R.S.*, 451 F. App'x 513 (6th Cir. 2011). "In evaluating this question, this Court considers whether the prevailing party moved for summary judgment; whether the losing party moved for summary judgment; what issues the parties focused on in their briefs; what factual materials the parties submitted to the court; and whether motions were filed by co-defendants." *Id.* Considering the totality of the proceedings in the district court, Plaintiff did not have sufficient notice that summary judgment would be granted against her on alternative grounds because the

entirety of the discussion and argumentation surrounding summary judgment focused on the issue of collateral estoppel.

Defendants' motion for summary judgment, even in its caption, exclusively referenced only their "Seventeenth Affirmative Defense," namely that Plaintiff's claims were barred by the doctrine of collateral estoppel and by operation of Ohio Rev. Code § 4112.14(C). The memorandum of law in support of that motion discussed only these issues, and it specifically stated Defendants' hope that if Plaintiff's claims could be dismissed on this basis that "costly discovery" on the merits of Plaintiff's claims "can be avoided." Plaintiff's response to the summary judgment motion likewise concerned itself only with arguments related to the issue of collateral estoppel. Plaintiff's response also mentioned the ongoing discovery, objecting to what she perceived as Defendants' attempt to evade further discovery by requesting summary judgment.

While these motions were pending, the district court had before it a fully briefed discovery dispute relating to Plaintiff's request for information pertaining to executive sessions of the board of education. The district court held in abeyance a decision on the discovery dispute until it ruled on Defendants' summary judgment motion, ostensibly to avoid an unnecessary ruling and to avert the need for discovery altogether, as Defendants had hoped. Instead of resolving the discovery dispute or disposing of the collateral estoppel issues in their entirety, the district court chose to chart a different course. It disposed of two of Plaintiff's claims on statutory and collateral estoppel grounds and, without notifying the parties, two claims on other grounds. The district court addressed Plaintiff's reasonable accommodations claim on the merits, finding that Plaintiff's requested accommodations were either provided to her or were unreasonable. The district court also determined that Plaintiff's claim of intentional infliction of emotional distress had not been sufficiently pleaded.

Considering the totality of these proceedings, Plaintiff could not have been aware that summary judgment would be entered against her on grounds that had not been raised by either party. The argumentation through three briefs—an opening motion, a response, and a reply—dealt entirely with collateral estoppel and the operation of Ohio Rev. Code

§ 4112.14(C). No mention was made of the possibility that summary judgment would be granted on some other basis. Indeed, the further factual development of Plaintiff's claims through discovery was put on hold in anticipation of the district court's decision on collateral estoppel. Plaintiff could not have been expected to "come forward with all of [her] evidence," *Celotex Corp.*, 477 U.S. at 326, because Defendants intended summary judgment to obviate the need to conduct any further discovery of that evidence.

Defendants argue that Plaintiff's response to its summary judgment motion contained sufficient factual and legal information to demonstrate her awareness that a broader grant of summary judgment was possible. A district court can grant summary judgment when "the basis for granting summary judgment [is] embraced within the evidence and arguments presented by the parties." *Turcar*, 451 F. App'x at 515. Plaintiff submitted an affidavit in support of her response that described her requests for accommodations and the school's response to them. Defendants assert that this evidence "negate[s] her accommodations claim as a matter of law."

On the contrary, Plaintiff's affidavit merely reiterates as background the same allegations made in her complaint—that Defendants either denied her requests for accommodations or failed to provide even those accommodations to which they had agreed. Plaintiff's response did not introduce new facts or legal argumentation on the subject of accommodations, nor could she have marshaled all her evidence to withstand summary judgment because the discovery process had been put on hold to await a decision on the issue of collateral estoppel. Plaintiff should not be deemed to have had "constructive" notice of the grounds of the district court's impending decision merely by restating various background facts, particularly when she was not given the opportunity to develop those facts or put them in context.

### B.  Prejudice

In addition to lack of notice, a losing party must also demonstrate that it was prejudiced by the district court's failure to provide an opportunity to respond with more evidence. *See Excel Energy*, 246 F. App'x at 960; *see also Harrington v. Vandalia-Butler Bd. of Ed.*, 649 F.2d 434, 436 (6th Cir. 1981) (finding that the district court's *sua*

*sponte* grant of summary judgment is subject to the "harmless error" rule).  The losing party must "demonstrate[] that it could have produced new favorable evidence or arguments had more notice been given."  *Turcar*, 451 F. App'x at 515.  Defendants argue that Plaintiff has no such evidence and that she was not prejudiced by the district court's grant of summary judgment.

Defendants' argument assumes that Plaintiff cannot come forward with any additional evidence in support of her claims.  The fact that a discovery dispute was held in abeyance pending a decision on summary judgment reveals the misguided nature of that assumption.  Plaintiff was seeking in discovery the very evidence that Defendants now accuse her of lacking.  She was prevented from further developing the record because summary judgment was granted and the discovery dispute was prematurely ended.  To demonstrate prejudice, Plaintiff need only show that she "could have produced new favorable evidence."  *Turcar*, 451 F. App'x at 515.  Had Plaintiff been given notice that the district court was considering granting summary judgment on alternative grounds, she could conceivably have sought or produced additional evidence to defend against summary judgment.

With respect to her ADA reasonable accommodations claim, Plaintiff argues that she would have presented evidence of the reasonableness of the accommodations she requested.  The district court summarily concluded that some of Plaintiff's requested accommodations were not reasonable, but no evidence had been introduced on the issue.  The district court must allow Plaintiff to develop the record.  Plaintiff submits that if she had been given notice of the district court's intention to rule on alternative grounds, she would have submitted the affidavit of Dr. Joel Steinberg, a forensic psychiatrist, who would have testified about the types of accommodations that would have been reasonable and appropriate for Plaintiff's disability.  Additionally, Plaintiff states that she would have conducted written discovery to explore the types of accommodations that other individuals with disabilities received.  This evidence may have been sufficient to establish that Defendants either denied Plaintiff a reasonable accommodation in

violation of the ADA or failed to provide even those accommodations to which they had agreed.

With respect to Plaintiff's claim of intentional infliction of emotional distress, Plaintiff was never given the opportunity to request leave to amend her complaint. Without notice that a dismissal was in the offing, Plaintiff would have had no reason to suspect that her complaint would be found deficient. We leave to the district court the decision whether or not to grant leave to amend, but Plaintiff should be given the chance to request the opportunity to amend, which is routinely afforded to other litigants. *See Neitzke v. Williams*, 490 U.S. 319, 329–30 (1989) ("[A] plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon."). Because additional discovery could reveal evidence that would support Plaintiff's ADA claim and an amended complaint may cure the deficiency of her intentional infliction of emotional distress claim, Plaintiff has demonstrated the likelihood of prejudice. Having determined that Plaintiff had no notice and was likely prejudiced by the district court's *sua sponte* grant of summary judgment on alternative grounds, we remand so that Plaintiff can further develop the record and the district court can consider all the evidence before ruling on summary judgment. *See Bennett*, 410 F.3d at 816.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision as to Count One, **REVERSE** as to Counts Two, Three, and Four, and **REMAND** for further proceedings consistent with this opinion.