**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0163n.06

**Case No. 16-6112**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 15, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANGELA BURTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| APPRISS, INC., | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |

BEFORE: KEITH, BATCHELDER and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff Angela Burton was employed by a software services company as an account manager for one year. Her position was classified as exempt from the overtime compensation requirements of the Fair Labor Standards Act. After she was terminated, she sued her former employer for unpaid overtime, alleging her actual duties were such that her position should not have been classified as exempt. The district court found no genuine dispute of material fact and awarded summary judgment to defendant employer. None of Burton's appellate arguments succeeds in undermining the district court's analysis, which we find to be fair and proper under the law. We therefore affirm.

## I. BACKGROUND

Defendant Appriss, Inc. is a software services company. A Delaware corporation, its principal place of business is in Louisville, Kentucky. Plaintiff Angela Burton worked for

Appriss in Louisville as an account manager in the Information Services Group from May 2011 to May 2012, when Appriss terminated her employment. The Information Services Group sells software to government agencies and commercial entities. During Burton's employment, her position was classified by Appriss as exempt from the overtime compensation requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). Indeed, Burton, who received an annual salary of $60,000, never asserted entitlement to overtime compensation during her employment. After she was discharged, Burton commenced this putative collective action in the Western District of Kentucky, claiming entitlement to unpaid overtime compensation for having worked more than forty hours in weeks when she made out-of-town business trips.[1] She alleges, in effect, that the account manager job description classified by Appriss as FLSA-exempt was not an accurate description of her day-to-day activities.

In relevant part, the account manager job description includes the following:

> As an Account Manager, you will have the opportunity to meet or exceed objectives by growing base revenue through the sale of enhanced products and solutions to current customers in assigned territory or industry specific vertical. This position is responsible for evaluating existing relationships, renewing existing business, and developing a strategy to grow the relationship and executing against the strategy.

> The Account Manager develops a clear and thorough strategic sales plan for each account by using business analysis tools to identify and track revenue trends, recognize sales opportunities, target specific sales activities, and analyze competitive threats; establishes and maintains excellent customer relationships at all levels; negotiates pricing and contracts and closes the sale; acts as a liaison between sales support and our customers to provide superior service and to ensure that maximum value of contract is attained; and demonstrates a clear understanding and ability to use all relevant products and solutions in client presentations and creation of account strategies.

---

[1] Burton abandoned the attempt to pursue collective action relief in the district court and this dimension of her original claim plays no role on appeal.

* * * *

The Account Manager requires minimal supervision from the Manager of Account Services.

The Account Manager is expected to take initiative for global and team needs as appropriate.

The Account Manager is recognized as a leader.

R. 40-2, Job Description, Page ID 476–77.

Consistent with this description, Appriss viewed Burton's account manager duties as consisting mainly of managing relationships with existing clients. Richard Cartor, Vice President of Human Resources for Appriss from 2006 to 2012, stated that account managers "managed existing accounts," a role which came to include "upselling different product lines to existing customers." R. 40-3, Cartor Dep. at 23, Page ID 500. Cartor confirmed the accuracy of the above job description, *id.* at 73–78, Page ID 550–55, as did Paul Colangelo, President of the Information Services Group, R. 40-1, Colangelo Dep. at 34, Page ID 415 (stating that account managers perform "functions like support the customer, provide service to the customer, liaison with the customer back to the parent company").

Burton testified, however, that the job description does not accurately reflect "what I did day-to-day," . . . that "the way it's worded, it doesn't fit with what I did." R. 40-6, Burton Dep. at 59–61, Page ID 641–643. Citing other portions of Cartor's and Colangelo's deposition testimony, Burton maintains that her work largely involved sales, not administrative duties. Yet, as Burton reviewed the job description more particularly in her deposition, she acknowledged that many aspects of it are accurate.

The district court received cross-motions for summary judgment on the propriety of Appriss's classification of the position as FLSA-exempt, found no genuine dispute of material

fact, and granted Appriss's motion. Burton timely appealed, contending the district court erred in its assessment of the primary duty of her work.

## II. ANALYSIS

### A. Standard of Review

The summary judgment ruling is reviewed de novo. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013). Under Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The reviewing court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Smith*, 708 F.3d at 825. Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Id*. A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment. *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015). "A factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333, 338 (6th Cir. 2013).

### B. FLSA Standards

The governing substantive law in this case is defined by the Fair Labor Standards Act and its implementing regulations. The FLSA requires employers to pay overtime wages to non-exempt employees who work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). This provision does not apply, in relevant part, to individuals "employed in a bona fide executive,

administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Appriss considers account

managers to be "administrative" employees. This "administrative" exemption is defined as

applying to an employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week
> . . . , exclusive of board, lodging or other facilities;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). Burton and Appriss agree that the first factor is met, but they dispute

whether Burton's job duties qualify under the second and third factors.

Under each of these two factors, the employee's "primary duty" is the focus. "The term

'primary duty' means the principal, main, major or most important duty that the employee

performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be

based on all the facts in a particular case, with the major emphasis on the character of the

employee's job as a whole." *Id.* Exemptions are to be narrowly construed and the employer

bears the burden of proving each element by a preponderance of the evidence. *Foster v.

Nationwide Mut. Ins. Co.*, 710 F.3d 640, 642 (6th Cir. 2013).

### C. Management or General Business Operations

Whether an employee's primary duty is "directly related to the management or general

business operations of the employer or the employer's customers" is a determination that finds

guidance in 29 C.F.R. § 541.201. The district court looked in particular to § 541.201(a): "To

meet this requirement, an employee must perform work directly related to assisting with the

running or servicing of the business, as distinguished, for example, from working on a

manufacturing production line or selling a product in a retail or service establishment." R. 58, Opinion at 4–5, Page ID 827–28 (quoting 29 C.F.R. § 541.201(a)). The district court identified this standard as the "administrative-production dichotomy," under which a production employee, one "whose job is to generate the product or service the business offers to the public," is deemed not to come within the administrative exemption. *Id.* at 5, Page ID 828 (quoting *Foster*, 710 F.3d at 644–45). The district court evaluated the record evidence in light of this dichotomy and determined that, although Burton emphasized the sales aspect of her duties, no reasonable trier of fact could find that "upselling" Appriss products was her primary duty.

In this conclusion there is no error. Indeed, as the district court recognized, the account manager job description, much of which, as Burton admits, accurately describes her actual duties, clearly comes within the ambit of § 541.201(b). This subsection provides relevantly that "[w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . computer network, internet and database administration; . . . and similar activities." Further, § 541.201(c) makes it clear that "[a]n employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers." Burton's job entailed the selling of Appriss products to existing customers, but this was undisputedly a subpart of her primary duty, i.e., to manage relations with, support, service, and be a liaison to, existing clients regarding their computer software needs.

The district court adequately summarized the relevant evidence in its opinion. Burton's contention that sales represented an important part of her job, even if accepted as true, does not alter the fact, or undermine the conclusion, that this was only *part* of her primary duty, to

manage existing client relations. As Burton herself acknowledges, Cartor characterized the sales role as occupying approximately one-third of an account manager's time. R. 40-3, Cartor Dep. at 81–82, Page ID 325. Burton has not identified any evidence refuting this. While this fact is not dispositive, it lends strong support to the district court's conclusion. Under 29 C.F.R. § 541.700(b), time "is not the sole test," but "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." That only one-third of the total time Burton devoted to her otherwise exempt account-manager responsibilities was occupied by arguably non-exempt upselling efforts is thus a factor that—albeit not unimportant—falls short of tending to show her primary duty was non-exempt. Instead, it tends to affirmatively show that sales was *not* her primary duty.

Burton cites *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 401 (6th Cir. 2004), for the proposition that "[a] job duty that occupies less than fifty percent of the employee's time can still be the primary duty if that duty is of principal importance to the employer or if the other duties performed are collateral to that duty." Yet here, as in *Schaefer*, the record is devoid of evidence to support the notion that Burton's upselling duties were more important than her management and retention of existing client accounts. Burton contends the Information Services Group Account Management Goals for 2012 demonstrate that her primary duty was sales. Yet, again, fair assessment of the goals shows quite the opposite. The prefatory overview of the goals provides:

> In 2011, the focus of our group was to build a solid team, to align each Account Manager with a specific product, and to maintain our base revenue. In 2012, the goal is to build on the results that we accomplished in 2011 and to be more strategic in our approach to how we handle our business in an effort to provide world class account management and service. In order to do this we will focus on the following goals . . .

R. 37-9, ISG Goals, Page ID 348–49. Thus, the primary thrust of the 2012 goals was to *maintain* base revenues by providing world class account management and service, not to increase revenues by upselling Appriss products to existing customers. The prefatory overview is followed by an outline of five goals with various steps to be taken by account managers to meet the goals, of which most are oriented toward *maintaining* existing customer satisfaction, and only a couple of which call for focus on opportunities to *grow* the account. Tellingly, while Goal #3 calls for maintaining "100% contract retention," Goal #4 aims for "6% growth over existing base revenue." *Id.* Clearly, upselling or selling new products is merely collateral to the primary duty of maintaining customer satisfaction and retaining existing accounts.

Burton argues that several factors weigh in favor of finding she was not an administrative employee. Her compensation, in addition to her salary, was potentially supplemented by sales commissions. Yet, Burton earned no commissions in 2011 or 2012.[2] Thus, although compensation by commissions may be evidence that product sales was a primary duty, this factor carries little, if any, weight in this case. Burton also points out that there is no evidence that her work was directly related to management of Appriss or its general business operations. This is true in one sense. However, the district court concluded that Burton's account manager position was not unlike the underwriters considered and held not to be production employees in *Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 994–96 (6th Cir. 2016). The *Lutz* court rejected the argument that underwriters were not exempt as administrative employees because they were not involved in the overall operations of the business or in determining the future direction of the business. Rather, because the underwriters were deemed to perform job duties analogous to

---

[2] Burton challenged Appriss's failure to pay her commissions in a state court breach-of-contract action, but she did not prevail; the jury returned a verdict in favor of Appriss.

those listed in § 541.201(b), like claims adjusters and employees in the financial services industry, they were held to be exempt.

The district court also found that Burton's duties were not unlike those of the sales representatives in *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 576–77 (7th Cir. 2012), who were deemed exempt as administrative employees even though their work involved promoting sales. The sales representatives were deemed to be "the public face of their employer" whose work was "based on maintaining continuous and regular contact with the [customers] to whom they were assigned, anticipating their objections and concerns and addressing them on behalf of their employers." *Id.* Indeed, this characterization seems to closely fit the account manager position occupied by Burton as well.

Burton contends the district court misapplied the teaching of *Lutz* and *Schaefer-LaRose*, and she has identified minor factual distinctions. Yet, these cases were not relied on by the district court as controlling; they were cited as illustrative of the breadth of the management-and-general-business-operations factor. The instant record, even when viewed in the light most favorable to Burton, contains no more than a mere scintilla of evidence that would support a finding that she was required to be classified as a production employee. This is insufficient to create a genuine dispute as to whether the second factor of the administrative employee exemption is established by a preponderance of the evidence. We therefore find no error in the district court's analysis on this factor.

## D. Discretion and Independent Judgment

An employer that would justify FLSA-exempt classification of an employee's position as administrative must also show that the primary duty of the position "includes the exercise of

discretion and independent judgment with respect to matters of significance." 29 C.F.R.

§ 541.200(a)(3). This factor is further defined as follows:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).

The district court held that Burton's work required her to exercise discretion and independent judgment. The court summarized its reasoning as follows:

> She testified that she kept her own hours, and her job function was inherently discretionary. She maintained customer relationships and determined and prioritized clients' needs. Cartor testified that account managers had "a great deal of autonomy in terms of travel . . . where they're going to be, what they're going to do, with whom they'll be meeting and . . . where they're working and what they're doing." And part of Burton's job duty was to provide consultation to management.

R. 58, Opinion at 7–8, Page ID 830–31 (citations to record omitted). The court rejected Burton's argument that she could not be deemed to exercise independent judgment because she was supervised, correctly relying on 29 C.F.R. § 541.202(c), which provides in part:

> The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

Thus, the court concluded that the fact of Burton's supervision was not determinative, finding that, *within* her supervision, Burton was required to exercise discretion in her management of customer relationships.

Burton's arguments on appeal are handicapped by a faulty premise, i.e., that her primary duty as an account manager was to sell Appriss's products and services. As explained above, upselling was merely a subpart of Burton's primary duty of managing relations with existing clients. It is clear from the account manager job description quoted above that Burton was expected and required, with "minimal supervision," to exercise discretion and independent judgment as a "leader" in "taking initiative" in, among other things, "evaluating existing relationships, renewing existing business, and developing a strategy to grow the relationship." R. 40-2, Job Description, Page ID 476–77. The importance of discretion and independent judgment is also evident in the ISG Account Manager Goals, which instructed Burton to implement more regular outreach to existing clients; increase the amount of time invested in clients; and improve communication with clients for the sake of managing relations, enhancing customer satisfaction, and promoting contract renewals. R. 37-9, ISG Goals, Page ID 348–49. Further, Cartor confirmed that, notwithstanding supervision, account managers "have a great deal of autonomy in terms of travel, in terms of discretion, where they're going to be, what they're going to be doing, with whom they'll be meeting and the decisions they make even on where they're working and what they're doing." R. 40-3, Cartor Dep. at 25, Page ID 502.

In her appellate brief, Burton identifies several considerations listed in 29 C.F.R. § 541.202(b), relating to discretion and independent judgment, on which she says Appriss has

not presented a preponderance of the evidence.[3] But § 541.202(b) expressly provides that it is illustrative, not exclusive. That Burton lacked discretionary authority in some respects does not defeat the showing that she was vested with discretionary authority to perform other duties, as summarized in the preceding paragraph.

Moreover, as the district court concluded, the account managers' discretionary authority relates to "matters of significance" insofar as "they make decisions that significantly impact the business." R. 58, Opinion at 8, Page ID 831 (quoting *Lutz*, 815 F.3d at 997–98). The court relied on Burton's own testimony that she had, in the latter half of 2011 alone, participated in closed sales amounting to potential revenues of over $260,000. This, the district court held, showed that her management of customer relations, evaluating and choosing between different courses of conduct, making independent decisions, and prioritizing clients' needs—no less than the underwriting work in *Lutz*—had a significant impact on Appriss's business.

---

[3] In full, § 541.202(b) provides:

The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Burton contends this is an erroneous way of determining the "matters of significance" requirement. She insists "that it is the work itself that must be of substantial importance—not the size of the consequences or loss that may result from improper performance of the employee's duties." *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 583 (6th Cir. 2004). Yet, the district court recognized that *Martin* was cited with approval in *Lutz*, where the underwriters' work in approving loans of greater than $250,000 was nonetheless held to have significantly impacted their employer's business. *See Lutz*, 815 F.3d 997–98. And here, even more so than in *Lutz*, the $260,000 worth of closed sales of products to existing clients did not merely reflect risk or potential loss, but the very life-blood of Appriss's business. Burton has thus failed to show error in the district court's analysis. She has failed to show there is a genuine question as to the third factor in the administrative exemption inquiry, discretion and independent judgment.

### III. CONCLUSION

Burton's appellate arguments are not frivolous. Because the appropriateness of the FLSA exemption is a fact-intensive inquiry guided by wordy federal regulations, and because the account manager position does not fall neatly into a defined classification, the facts of this case provide grounds for colorable arguments. Yet, the district court addressed Burton's claim fairly and properly under the law. On de novo review, we find no error. Judgment **AFFIRMED**.